**Luis AVINCOLA, Petitioner,**

v.

**James STINSON, Superintendent, Great Meadow Correctional Facility, Respondent.**

**No. 97 CIV 1132(SAS).**

United States District Court, S.D. New York.

July 9, 1999.

---

Luis Avincola, Comstock, NY, pro se.

Richard Nahas, Asst. District Atty., New York City, for Respondent.

## ORDER

SCHEINDLIN, District Judge.

I have duly considered petitioner's Objections, dated May 17, 1999, to the Report and Recommendation of United States Magistrate Judge Andrew J. Peck, dated March 19, 1999, and have found them to be without merit. Accordingly, I hereby accept and adopt the thoughtful and extremely thorough Report and Recommendation in full and dismiss the above-referenced *habeas* petition. The Clerk of the Court is directed to close this case.

SO ORDERED.

137

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Luis Avincola seeks a writ of habeas corpus from his 1986 conviction of murder in the second degree, for which he was sentenced to twenty-five years to life imprisonment. (*See* Pet. ¶¶ 1–4.) Avincola raises numerous grounds in his petition. One of his grounds, that the trial court improperly omitted a circumstantial evidence charge from the jury instructions (Pet.¶ 12(F)), was denied by the state court on a state procedural ground. Therefore, this denial rested on an adequate and independent state law ground and federal habeas review of this claim is barred. The federal nature of one of Avincola's grounds, that the trial court improperly admitted evidence of uncharged crimes (Pet.¶ 12(B)) was not fairly presented to the state court. Because Avincola may no longer raise it in state court, this claim is deemed exhausted; however, his procedural default bars federal habeas review of this claim. Additionally, two parts of his prosecutorial misconduct claim (Pet. ¶ 12(E)) have never been presented to any state court. Avincola is now procedurally barred from raising these claims in state court, so they are deemed exhausted, but his procedural default also bars federal habeas review of these claims. Avincola's remaining grounds—(1) improper admission of hearsay evidence (Pet.¶ 12(F)), (2) violation of his Fifth Amendment rights based on the improper admission of statements he made while in custody (Pet. ¶ 12(A)), (3) violation of his confrontation rights under the Sixth Amendment (Pet. ¶ 12(C)), (4) the remaining prosecutorial misconduct claims (Pet.¶ 12(D)-(E)), (5) ineffective assistance of trial counsel (Pet. ¶ 12(G)), and (6) ineffective assistance of appellate counsel (Pet.¶ 12(G))—are all exhausted, but lack merit. Accordingly, for the reasons set forth below, the Court should deny Avincola's habeas petition.[1]

---

1. After Avincola filed his Petition and accompanying 83–page memorandum of law, Judge Scheindlin ordered that he file an amended brief of less than 35 pages. (8/1/97 Order at 1–2.) Avincola filed an amended brief which argued the merits of only four of the grounds

## FACTS

At approximately 6:00 p.m. on December 30, 1985, Luis Avincola, also known as "Columbia," shot and killed Rudolpho Garcia, also known as "San Martin." Soon after the shooting, Avincola told San Martin's girlfriend, Nilda Ortiz Rivera, also known as "Flaca," that he had just killed her "old man." (*E.g.*, Trial Transcript [hereinafter, "T."] 305, 315–16, 331.)

### Avincola's In Custody Statements to the Police

At the crime scene, Rivera reported to the police that a man named "Columbia" had just approached her and told her that he had shot San Martin. (6/30/96 Suppression Hearing Tr. [hereinafter, "S."] 99,122–23; *see also* Ex. B: [2] 7/14/86 Trial Ct. Opinion at 2–4.) Based on that information, the police arrested Avincola later that night. (S. 14–15; *see* Ex. B: 7/14/86 Trial Ct. Op. at 3.) When Avincola was brought to the precinct, he appeared to the police to be "stoned," that is, under the influence of cocaine, as his pupils were dilated and he was in a "very hyper" state. (S. 78–79, 89–90; *see* Ex. B: 7/14/86 Trial Ct. Op. at 5.) However, his speech was not slurred and he appeared to know where he was. (S.90–92.)

Detective Palma read Avincola his *Miranda* rights in English, but Avincola indicated in Spanish that he did not understand. (S. 34, 40–41, 69–70, 91–92; *see* Ex. B: 7/14/86 Trial Ct. Op. at 4–5.) Detective Palma, who is bilingual, read Avincola a Spanish version of the *Miranda* rights, which Avincola indicated he understood. (S. 34, 40–41, 41–43, 45, 91–93; *see* Ex. B: 7/14/86 Trial Ct. Op. at 5.) Telling the police that he had nothing to hide, Avincola answered subsequent questioning by police after he ate some food and had slept for around four hours. (S. 45, 79, 82–83; *see* Ex. B: 7/14/86 Trial Ct. Op. at 5–6.) Avincola told the police that "San Martin[ ] was following him around the neighborhood. And he was trying to take me off. And that's why I stated I was going to kill him. Because I thought he had a gun." (S. 55; *see* Ex. B: 7/14/86 Trial Ct. Op. at 6–7.) The police prepared a written version of this statement, but Avincola did not sign it. (S. 55–56; *see* Ex. B: 7/14/86 Trial Ct. Op. at 6.)

Prior to trial, Avincola filed a motion to suppress, *inter alia*, his statements to the police. (*See* Ex. B: 7/14/86 Trial Ct. Op. at 8.) A suppression hearing was held prior to trial. At the hearing, Detective Palma testified as to the reading of the *Miranda* warning:

[DETECTIVE PALMA]: When I read him his rights in English he stated he didn't understand it. When I read them in Spanish, he responded yes to all the questions. So therefore, I realized this individual understood what I was telling him.

. . .

Q Did you have to repeat any of the rights?

A No.

Q Did he ask you to repeat any of the rights?

A No.

Q Did he ask you to repeat any of them?

A No.

in his Petition. (Avincola Am. Br. at 18–33.) The State addressed only these four grounds. (State Br. at 10–24.) Avincola then filed a reply brief arguing that, because the State did not address the remaining grounds that he had raised in his original Petition and brief, the State admits "the facts alleged in the petition." (Avincola Reply Br. at 9.) The State then submitted a letter denouncing Avincola's litigation tactics and addressing the remaining claims. (State 10/27/97 letter at 1–

4.) To prevent Avincola from attacking this Report and Recommendation in a similar fashion and because the State has responded to all of his claims, the Court will address all of the claims raised in Avincola's original Petition and accompanying brief.

**2.** References to Exhibits are to those in the State's Appendix to this Court.

Q Did he answer yes right after you completed asking the rights in Spanish?

A Yes.

Q No hesitation?

A No, no hesitation whatsoever.

(S.91–93.) Additionally, the trial court asked Detective Palma to state in Spanish the *Miranda* warnings that he gave to Avincola, which were translated as follows:

THE COURT: I want to hear from the detective now what he said and I want the [official court] interpreter to listen to it. Say what you said in Spanish to him.

(Whereupon the witness read from a document in Spanish.)

THE COURT: Will you interpret that?

. . . .

THE INTERPRETER: . . . . You have the right to remain silent. And to answer questions; do you understand? Anything you say we can use against you; do you understand? You have the right to consult a lawyer before you answer any questions and to have an attorney present to answer questions; do you understand? If you don't have the abil [sic] for a lawyer the city will give you a free one. With my command of two languages I understood. It is not a perfect Spanish, it would be hard to understand for a non-educated person.

THE COURT: Don't give me an evaluation, but translate into English even with mistakes what he is saying.

THE INTERPRETER: If you don't have a lawyer at your disposal you have the right to state silence until you have the opportunity to have an attorney. Now that I have advised you of your rights, do you want to speak right now with the police?

[DETECTIVE PALMA]: His answer was he had nothing to hide.

(S.44–45.) The trial court denied Avincola's suppression motion, finding that Avincola "was fully and properly advised of his *Miranda* rights in Spanish by Detective Palma and knowingly and intelligently waived those rights." (Ex. B: 7/14/86 Trial Ct. Op. at 8.)

### The Prosecution's Opening Statement at Trial

In his opening statement at trial, the prosecutor told the jury about a witness to the shooting:

And as I indicated the incident happened sometime around 7 o'clock that evening.

The evidence will come from a witness named Luis Alvarado who was present in the apartment on the third floor, whose attention was drawn to an argument between the deceased and defendant on the third floor landing immediately outside the door . . . .

Evidence will show that [Alvarado] was watching a Spanish soap opera on TV. After initially going to the peephole in the inside of his apartment, he then walked away. Within moments he heard a single gunshot.

He went back to the peephole and saw the defendant with a sawed-off rifle running down the stairs from the third floor down to the second floor. He lost sight of him.

(T. 27.) When the prosecution was unable to produce Alvarado as a witness at trial, Avincola's counsel moved for a mistrial. (T. 855–56.)

In response, the prosecutor stated that he had intended to call Alvarado as a witness at trial, and had met with Alvarado in his office on the morning of July 7, 1986, a few days before the trial was scheduled to commence. (T. 856–57.) At that meeting, the prosecutor informed Alvarado that "the case was going to proceed to trial" and that he probably would testify on July 11. (T. 857–58.) On July 11, Alvarado did not appear at the prosecutor's office as his subpoena had directed and the prosecutor sent a detective to find Alvarado. (T. 861.) That same day, the prosecutor gave his opening statement re-

ferring to Alvarado's potential testimony. (*Id.*) Upon returning to his office at the end of the day, the prosecutor learned that Alvarado's girlfriend had left her job and got some indication that Alvarado may have fled, and "through later investigation," including "rumor and innuendo," the prosecutor learned that "the word in the street [was] that he had fled to Santo Domingo." (*Id.*) The trial court denied the mistrial motion. (T. 865.)

During his summation, Avincola's attorney used Alvarado's absence to Avincola's advantage:

> I need not elaborate on the obvious fact that there is no witness who came into this court and gave evidence before you that he or she saw Luis Avincola shoot San Martin.
>
> What you do have is someone who flew the coop, Tony. Luis Alvarado who lived right here.... It's got these two doors. Both to his apartment, I think you heard Nilda say that. And the stairway, the top of the stairs is where the shooting occurred.
>
> That's where Tony lived. Tony who used to deal drug deals with San Martin and Nilda.
>
> Tony whose apartment was right in front of the scene where San Martin was killed. Tony who when he had to come into court to testify under oath before a jury about whatever, flew the coop and went to Santo Domingo, so they said.
>
> Does he have some reason to flee in connection with this case when he lived right at death's door step literally where he dealt drugs from with San Martin?

(T. 1002–03.)

### Evidence at Trial

The victim, San Martin, along with his girlfriend Rivera, were steerers for a drug dealer working out of a building located at 568 W. 161st Street in Manhattan. (T. 308–10.) Avincola, who was a competing drug dealer working out of the same building, had twice threatened to kill Rivera and San Martin a week before the actual

shooting. (T. 311–13, 324–26, 415, 440, 442, 445–48.) A week prior to the shooting, Avincola was in Mayra Mejia's apartment, carrying an object in a paper bag about two feet in length that looked like a shotgun. (T. 591–93, 623–24, 650.) On December 29, 1985, Avincola told Mejia that he swore "to his mother that he was going to kill San Martin" because San Martin and Rivera "were taking his client[s] away." (T. 596–97.)

On December 30, 1985, Clarence Collins, the superintendent of the adjoining building, saw Avincola on the stoop of 568 W. 161st Street. (T. 164–65.) Collins shared a soda with Avincola and then left him on the stoop and went home. (T. 165–66, 246.) Immediately after he entered his building, Collins heard two shots that appeared to come from the next building. (T. 165.) Fifteen minutes later, he entered 568 W. 161st Street and found San Martin lying on the stairs. (T. 167–68.)

Within an hour of the shooting, Avincola approached Rivera on the street two blocks away from the crime scene and told her to " 'go to 6—161, that I killed the one that is your old man.' " (T. 315–16.)

Avincola was arrested later that night at a hotel and brought to the police precinct. (T. 281–84.) The hotel desk clerk gave the police a rent receipt for Avincola's room. (T. 705–07.) At the precinct, Rivera and Mejia identified Avincola as "Columbia" through a one-way mirror. (T. 319–20, 467–68.) Detective Palma read Avincola his *Miranda* rights in Spanish. (T. 677–80, 696–98.) Four hours later, in response to questioning by the police, Avincola admitted that he knew San Martin but denied that he had killed him. (T. 700–02.). Additionally, he told the police that " 'San Martin was always following me around trying to take me off for my drug customers,' " and added, "that's why I stated I was going to kill him because I heard that San Martin had a gun." (T. 713, 725–26.)

The police did not recover the murder weapon. (T. 57, 65–66, 131, 138–39, 570.)

The police did find a shotgun shell on the stairs near San Martin's body, consistent with a cartridge that could have been shot from a .30 caliber semiautomatic carbine rifle that would have an overall length of about 37 inches and a barrel length of 18–22 inches. (T. 76–80.)

### Rivera's and Collins's Trial Testimony and Invocation of Their Fifth Amendment Rights

During cross-examination, witness Clarence Collins asserted, upon the advice of counsel, his Fifth Amendment privilege against self-incrimination in response to defense counsel's questions about potential liability for tax fraud (T. 175–177), sources of income other than his building superintendent job (T. 177–78, 217–18), his drug use (T. 187, 223), and his possession of a firearm (T. 221–22). Upon each of these assertions of privilege, the trial court instructed the jury that "since the questions put to Mr. Collins ... relate solely to his own credibility or believability as a witness, you may take into consideration his refusal to answer that question as though he had answered the question unfavorably to himself." (T. 176; *see also* T. 178, 218, 221–23.)

During the cross-examination, witness Rivera asserted her Fifth Amendment privilege against self-incrimination in response to defense counsel's questions about her drug activities and her sources of income. (*E.g.*, T. 337, 341, 345, 346, 350–53, 392–93, 396–97, 420–23, 442, 461, 473.) The trial court only allowed Rivera to assert her privilege at four separate times (T. 345, 346, 392–93, 420–21); the remaining times the trial court either ordered her to answer as the answer was not privileged or ordered her to answer giving her immunity from possible prosecution related to those answers. (T. 337, 341, 350–53, 396–97, 421–23, 442, 461, 473.) When the trial court allowed her to assert her privilege, the court made it clear to the jury that the question was asked solely for purposes of credibility and the jury could consider her refusal to answer as an answer negative to Rivera. (T. 345, 346, 388–89, 392–93, 421.) [3]

### The Victim's Father Spoke to Two Jurors During a Trial Recess

During a lunch recess, San Martin's father approached two jurors sitting on a bench, identified himself and attempted to chat with them. (T. 427, 431–35.) The jurors immediately reported the incident to a court officer and the judge questioned each of the two jurors separately. (T. 427, 430.) One of the jurors explained the incident as follows:

A JUROR: What happened is we were standing at the juror benches waiting to come into the courtroom. This was after lunch was finished.

It was about 1:30 this afternoon.

And another juror and myself were standing there talking. And there was Hispanic man that walked up and stood beside this other gentleman that I was talking to.

. . . .

We were just talking about something beside the point. All of a sudden this man says, "do you think we'll be finished or do you think the case will be over in a week?"

And I looked at him. I said, "that depends what's going on in the case." I

---

3. For example:

THE COURT: And I am sustaining the witness' right to invoke the Fifth Amendment.

And again, ladies and gentlemen, her refusal to answer these questions, this particular question about whether she has been selling drugs since she has left Rikers Island, cannot be interpreted by you as having any relevance to the merits of this case. However, since it does relate to her credibility, her believability as a witness, you may take into consideration her refusal to answer those questions as though she answered negatively to herself. That is relevant solely to the issue of her believability as a witness and not as to the guilt or innocence of the defendant.

(T. 345.)

said I didn't know—I thought he was on another jury.

As far as I was concerned this is where the jurors sit.

So then he said, "well, I came all the way from Massachusetts."

I looked at him, what the heck is he doing here from Massachusetts on a jury.

And then I didn't say anything.

And he said, "well, I hope it's over soon." He said, "I'm San Miguel's father."

THE COURT: Who did you understand that to be?

A JUROR: He said, "I'm the father of the man that was shot."

THE COURT: San Martin?

A JUROR: San Martin, I'm sorry.

THE COURT: And then what happened?

A JUROR: Then immediately the other juror and myself, just—we just completely ignored the man. And we wouldn't talk with him any longer.

We didn't want to have anything to do with him because we didn't want to affect the case.

So at that point the other juror and myself broke into a completely different conversation. And we just continued on.

And he walked away.

(T. 431–33.) The other juror gave a similar account of the incident. (T. 435.)

The trial court asked each of the two jurors whether the incident would have any effect on their judgment. (T. 434, 435.) The first juror replied, "I don't think it would affect my opinion one way or the other," and the second juror simply stated, "Not at all." (T. 434, 435.) The trial court asked the jurors whether they had mentioned this incident to the other jurors. (T. 433–35.) The first juror replied that one other juror had asked him "just out of curiosity" what had happened and he replied, "Oh, it's nothing. Something happened earlier." (T. 433–34.)

The second juror stated that he had not spoken with other jurors about the incident. (T. 435.) The trial court admonished the two jurors not to discuss the incident with any other jurors. (T. 434, 435–36.) Neither side requested a mistrial. (*See* T. 427–38.)

## PROCEDURAL HISTORY

On July 25, 1986, the jury convicted Avincola of second degree murder. (T. 1164–67; Pet. ¶¶ 2, 4.) On September 4, 1986, the trial court sentenced Avincola to twenty five years to life imprisonment. (Pet. ¶ 3; Sent. Tr. 12.)

### Avincola's First § 440.10 Motion

On March 29, 1989, before his direct appeal was fully briefed, Avincola moved pro se to vacate his judgment pursuant to N.Y.Crim. Proc. Law § 440.10, arguing ineffective assistance of trial counsel based on an alleged conflict of interest. (Ex. C: 3/29/89 Avincola Aff. in Supp. of Mot. to Vac. at 3.) Avincola claimed that his lawyer was conflicted because the "Lawyer's Manual[ ] covering the periods of 1985 through 1988" listed his trial attorney as a Legal Aid lawyer and witness Collins's attorney was also a Legal Aid attorney. (*Id.* at 3, 4.) The trial court denied the claim, stating:

The Court takes judicial notice of the fact, which is reflected in the court record, including Mr. Stein's notice of appearance, that Mr. Stein, at the time of the trial was not affiliated with Legal Aid, but was an attorney in private practice and a member of the "18B" panel of attorneys appointed by the court to represent indigent defendants.

(Ex. C: 5/1/89 Order at 2.) On July 20, 1989, the First Department denied leave to appeal. (Avincola Br. at 2; Answer ¶ 7.)

### Avincola's Direct Appeal

On direct appeal to the First Department, Avincola's appointed appellate counsel advanced five grounds: (1) evidence of uncharged crimes was improperly admit-

ted at trial (Ex. D: Avincola 1st Dep't Br. at 15–20), (2) Avincola's statements to the police should not have been admitted into evidence (*id.* at 21–24), (3) Avincola's confrontation rights were violated when two prosecution witnesses asserted their Fifth Amendment privilege against self-incrimination (*id.* at 25–28), (4) the prosecutor failed to produce a witness mentioned in his opening statement (*id.* at 29–32), and (5) Avincola's sentence was unduly harsh and excessive (*id.* at 33). Additionally, Avincola submitted a *pro se* supplemental brief raising thirteen arguments, including, *inter alia*, (1) improper admission of hearsay evidence (Ex. E: Avincola 1st Dep't Pro Se Supp. Br. at 14); (2) prosecutorial misconduct based on the prosecutor's (a) reference in his summation to evidence not in the record, (b) placement of the hotel rent receipt into evidence, (c) failure to disclose a cooperation agreement given to Rivera, and (d) failure to disclose an exculpatory statement by Avincola to a police officer (*id.* at 33–39); and (3) ineffective assistance of trial counsel due to his trial attorney's (a) conflict of interest (the same claim raised in the § 440.10 motion), (b) failure to object to hearsay testimony at the suppression hearing and at trial and (c) failure to move for a mistrial based on the fact that the jurors had discussed the case (*id.* at 45–46).

The First Department affirmed Avincola's conviction. *People v. Avincola*, 162 A.D.2d 288, 556 N.Y.S.2d 877 (1st Dep't 1990). First, the First Department held that Avincola's statements while in custody were properly admitted:

> Although [Avincola's] agitation and dilated pupils constituted physical manifestations of his drug use, the hearing court's conclusion that defendant was alert was warranted by the evidence. In that regard, [Avincola's] suggestion that the

detective switch from English to Spanish is strong indication that he did not lack the capacity to appreciate the nature and consequences of his statements, his drug use notwithstanding.

*People v. Avincola*, 162 A.D.2d at 289, 556 N.Y.S.2d at 878. Second, the First Department held that the introduction of testimony that Avincola had possessed a shotgun "did not constitute proof of an uncharged crime," noting that the the evidence was introduced in order to, and was relevant to, show that Avincola "had the means to commit the crime." *Id.* at 289–90, 556 N.Y.S.2d at 879. Third, the First Department found that Avincola's confrontation rights had not been violated when the two witnesses "occasionally asserted their privilege against self-incrimination," explaining that:

> Counsel's inability to procure a response to every question did not prevent him from adequately challenging the direct testimony of the two witnesses, and, indeed, the record does not indicate that defendant's attorney abandoned any line of interrogation or argument as a result of the invocation of the privilege against self-incrimination.

*Id.* at 290, 556 N.Y.S.2d at 879 (citation omitted). Fourth, the First Department held that the trial court did not abuse its discretion in denying a mistrial motion based on the prosecution's failure to produce a promised witness. *Id.* Finally, as to Avincola's "remaining contentions," including the hearsay, prosecutorial misconduct, and ineffective assistance of counsel claims, the First Department held that they "either lack[ed] merit or [were] unpreserved for appellate review." *Id.*

The New York Court of Appeals denied Avincola's request for leave to appeal.[4] *People v. Avincola*, 76 N.Y.2d 937, 563 N.Y.S.2d 66, 564 N.E.2d 676 (1990).

---

4. Avincola's leave to appeal letter was not submitted to this Court by either party. The State mentioned in its Answer that it "has not been able to locate petitioner's letter seeking leave to appeal." (Answer ¶ 17.) The State submitted its letter in opposition to Avincola's application, in which the State stated that "the defendant highlights the two issues he deems most worthy of this Court's consideration," namely, the admission of evidence of uncharged crimes and the admission of statements Avincola made while in police custody.

### Avincola's Second § 440.10 Motion

In October 1991, Avincola filed a second CPL § 440.10 motion in the trial court, alleging, *inter alia*, (1) that the trial court failed to give the jury a circumstantial evidence charge, and (2) prosecutorial misconduct based on the prosecutor's (a) alteration of Mejia's statement in a document, (b) failure to provide Avincola with documents so that he could perfect his appeal, and (c) failure to preserve evidence, namely the search warrant and the rent receipt (Ex. J: 10/7/91 Avincola Aff. in Supp. of Mot. to Vac. at 4, 8–13.) The trial court denied the motion with regard to the jury instruction claim due to Avincola's "unjustifiable failure to raise [it] on appeal," relying on a state procedural rule. (Ex. L: 12/5/91 Opinion at 2–3.) The trial court found that the claim that the prosecutor failed to turn over documents on appeal was meritless because Avincola's allegations were either "unsupported or refuted by documentary proof, or because there is no legal basis for the claim." (*Id.* at 3–4.) Avincola's application for leave to appeal was denied by the First Department (*see* Avincola Br. at 3), and the Court of Appeals. *People v. Avincola*, 80 N.Y.2d 894, 587 N.Y.S.2d 925, 600 N.E.2d 652 (1992).

### Avincola's Motion for a Writ of Error Coram Nobis in the First Department

In September 1992, Avincola filed a "motion for a writ of error coram nobis" in the First Department, alleging ineffective assistance of appellate counsel. (Ex. M: Avincola's 1st Dep't Coram Nobis Aff. at 3.) Avincola claimed that his appellate counsel was ineffective for failing to argue on appeal that (a) "the jury was not prop-

erly instructed as to the evaluation of circumstantial evidence," and (b) "the prosecutor produced and altered Myra [sic] Mejia's originalpolice statement on direct appeal." (*Id.* at 7, 8, 12.) The First Department denied the application. (Ex. N: 12/15/92 Order.) *People v. Avincola*, 188 A.D.2d 1092, 592 N.Y.S.2d 578 (1st Dep't 1992).

### Avincola's Current Federal Habeas Corpus Petition

Avincola filed his federal habeas petition in January 1997. (Pet. at 1, 7.) In October 1997, Judge Scheindlin dismissed the petition as untimely under the Antiterrorism and Effective Death Penalty Act's ("AEDPA") statute of limitations, as then-interpreted under the Second Circuit's decision in *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir.1997). *See Avincola v. Stinson*, 97 Civ. 1132, 1997 WL 681311 at *2–3 (S.D.N.Y. Oct.31, 1997). The Second Circuit remanded the case in September 1998 in light of its decision in *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998), that state prisoners whose convictions became final before the AEDPA's effective date of April 24, 1996 had until April 24, 1997 to file a habeas petition. *Avincola v. Stinson*, No. 97–2925, slip op. (2d Cir. Sept. 25, 1998).

### ANALYSIS

### I. AVINCOLA'S CIRCUMSTANTIAL EVIDENCE JURY CHARGE CLAIM SHOULD BE DENIED BECAUSE THE TRIAL COURT'S DECISION WAS BASED ON AN INDEPENDENT AND ADEQUATE STATE LAW GROUND

Avincola claims that his "conviction was based on inadmissible . . . circumstantial

---

(Ex. H: 7/23/90 State Letter to Ct.App. at 1–2.) However, the State concluded its letter by stating that "[t]he other issues raised by the defendant below are even less worthy of further appellate review." (*Id.* at 2.) It could reasonably be inferred from this statement that Avincola advanced all of his claims (or at least more than the other two mentioned above) in his leave application. Based on this ambiguity and the parties' failure to provide the Court with a copy of Avincola's leave to appeal application, the Court cannot deter-

mine which claims Avincola actually properly presented to the Court of Appeals. Any claims which he failed to properly present to the Court of Appeals would be barred from federal habeas review. *See Jordan v. Lefevre*, 22 F.Supp.2d 259, 269 (S.D.N.Y.1998) (Mukasey, D.J. & Peck, M.J.) However, because the State does not contend that Avincola failed to present any of his claims to the Court of Appeals in his leave application, and for the sake of completeness, the Court will not reject any claims on this basis.

evidence [where] no circumstantial evidence charge was given to the jury." (Pet. ¶ 12(F); see also Avincola Br. at 65–72.) Avincola did not present this ground to the state court until his second CPL § 440 motion. (Ex. J: 10/24/91 Avincola § 440 Aff. at 18.) The trial court denied the second § 440.10 motion as to this claim "because of [Avincola's] unjustifiable failure to raise [it] on-[direct] appeal," relying on a state procedural rule. (Ex. L: 12/5/91 Opinion at 2–3.)

■ The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a ' "fundamental miscarriage of justice." ' " Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted); accord, e.g., Coleman v. Thompson, 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996), cert. denied, 520 U.S. 1108, 117 S.Ct. 1116, 137 L.Ed.2d 317 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990); Torres v. Irvin, 33 F.Supp.2d 257, 273 (S.D.N.Y. 1998) (Cote, D.J. & Peck, M.J.); Williams v. Bennet, No. 97 Civ. 1628, 1998 WL 236222 (S.D.N.Y. April 20, 1998) (Baer, D.J. & Peck, M.J.); Farrington v. Senkowski, 19 F.Supp.2d 176, 180 (S.D.N.Y.1998); Cooper v. LeFevre, No. 94–CV–5958, 1998 WL 386340 at *1–2 (E.D.N.Y. July 8, 1998); Wells v. LeFavre, 96 Civ. 3417, 1996 WL 692003 at *3 (S.D.N.Y. Dec.2, 1996) (Scheindlin, D.J.); Vera v. Hanslmaier, 928 F.Supp. 278, 285 (S.D.N.Y.1996) (Jones, D.J. & Peck, M.J.); Liner v. Keane, 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan.3, 1996) (Wood, D.J. & Peck, M.J.).

■ Here, the trial court rejected Avincola's claim because it was not raised on direct appeal. (Ex. L: 12/5/91 Opinion at 2–3.) New York law bars consideration via collateral attack of an issue that could have been raised on direct appeal. N.Y. CPL § 440.10(2)(c); see, e.g., People v. Cooks, 67 N.Y.2d 100, 103–04, 500 N.Y.S.2d 503, 505, 491 N.E.2d 676 (1986); People v. Byrdsong, 234 A.D.2d 468, 469, 651 N.Y.S.2d 903, 903 (2d Dep't 1996) ("Pursuant to CPL 440.10(2)(c) a court must deny a postjudgment motion to vacate a conviction when sufficient facts appear in the record so that an issue may be adequately reviewed on a direct appeal and the defendant unjustifiably failed to raise the claim on appeal."); People v. Skinner, 154 A.D.2d 216, 221, 552 N.Y.S.2d 932, 935 (1st Dep't 1990) ("defendant's failure to present his constitutional attack upon his conviction after trial in the course of his direct appeal forecloses any consideration of it [in a § 440.10 proceeding]"). The Second Circuit has held CPL § 440.10(2)(c) to be an adequate and independent state ground. See, e.g., Reyes v. Keane, 118 F.3d 136, 139 (2d Cir.1997); Levine v. Commissioner of Correctional Servs., 44 F.3d 121, 126 (2d Cir.1995); Ramos v. Costello, 96 Civ. 3659, 1997 WL 231129 at *2 (S.D.N.Y. May 7, 1997) ("The procedural ground on which the state court denied his § 440.10 motion[, precluding claims that could have been raised on direct·appeal by were not,] is an independent and adequate state ground that prevents him from asserting those claims in a federal habeas corpus proceeding absent cause and prejudice."); Wells v. LeFavre, 1996 WL 692003 at *3 ("CPL § 440.10(2) presents an adequate and independent state ground for denying Petitioner relief").

Because there is an adequate and independent finding by the state trial court that Avincola had procedurally defaulted on this claim, Avincola would have to show in his habeas petition "cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. at 2565; *see also, e.g., Schlup v. Delo,* 513 U.S. 298, 324–27, 115 S.Ct. 851, 865–67, 130 L.Ed.2d 808 (1995) (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence"); *Torres v. Irvin,* 1998 WL 824527 at *18; *Williams v. Bennet,* 1998 WL 236222 at *6; *Farrington v. Senkowski,* 19 F.Supp.2d at 180 ("The miscarriage of justice exception applies where a petitioner is 'actually innocent' of the crime of which he was convicted or the penalty which was imposed."); *Underwood v. Artuz,* 95 Civ. 7866, 1996 WL 734898 at *3 (Dec. 24, 1996) (Scheindlin, D.J.).

█ Ineffective assistance of counsel can represent cause for a procedural default. *See also, e.g., Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986) ("Ineffective assistance of counsel, then, is cause for a procedural default."); *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997); *Simmons v. Ross,* 965 F.Supp. 473, 478 (S.D.N.Y.1997); *Hurd v. Keane,* 97 Civ. 2991, 1997 WL 582825 at *2 (S.D.N.Y. Sept.19, 1997) (Scheindlin, D.J.). "However, . . . the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier,* 477 U.S. at 489, 106 S.Ct. at 2646; *Reyes v. Keane,* 118 F.3d at 139–40; *Redd v. Quinones,* 98 Civ. 2604, 1998 WL 702334 at *3 (S.D.N.Y. Oct.7, 1998); *Taylor v. Mitchell,* 939 F.Supp. 249, 255 (S.D.N.Y.1996); *Gaiter v. Lord,* 917 F.Supp. 145, 149 (E.D.N.Y. 1996). Thus, the Court must examine Av-

incola's ineffective assistance claim in this context. *See, e.g., Simmons v. Ross,* 965 F.Supp. at 480 ("the showing required to demonstrate ineffective assistance of counsel for both purposes"—*i.e.,* as the "cause of his procedural default" and "as an independent ground for his petition"—"is the same.").

## A. *Ineffective Assistance of Counsel*

Avincola alleges that:

> The court found that the defendant's claims . . . could have been but were not determined on appeal because the defendant failed to raise them. . . . includ[ing] . . . the claim that the jury was not properly instructed as to the evaluation of circumstantial evidence. . . . The motion [was] denied as to these claims because [of] defendant's unjustifiable failure to raise them on appeal.
>
> . . . .
>
> [Appellate counsel] Mr. Bokser did not recognize the significance of these issues prior to submitting his brief. Appellate counsel assured me, "that my case presented no viable strong issues other than those which he presented in his brief . . ."

(Ex. M: 9/1/92 Avincola Coram Nobis Aff. ¶ 18, 21.) In light of the requirement to liberally construe pro se filings, the Court addresses Avincola's ineffective assistance of counsel claim as a possible basis for "cause" for his procedural default.

█ The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065; *accord, e.g., Torres v. Irvin*, 97 Civ. 5078, 1998 WL 824527 at *21 (S.D.N.Y. Nov.23, 1998) (Cote, D.J. & Peck, M.J.).

Second, the defendant must show prejudice from counsel's performance. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of errors on the remaining findings, *a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.*

*Id.* at 695–96, 104 S.Ct. at 2069 (emphasis added); *see also, e.g., DeLuca v. Lord*, 77 F.3d 578, 584 (2d Cir.), *cert. denied*, 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996); *Torres v. Irvin*, 1998 WL 824527 at *21.

■ The Supreme Court has counseled that these principles "do not establish mechanical rules." *Strickland v. Washington*, 466 U.S. at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069; *accord, e.g., Torres v. Irvin*, 1998 WL 824527 at *21.

■ The *Strickland* test applies to appellate as well as trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *Torres v. Irvin*, 1998 WL 824527 at *22; *Hurd v. Keane*, 97 Civ. 2991, 1997 WL 582825 at *2 (S.D.N.Y. Sept.19, 1997) (Scheindlin, D.J.); *Ehinger v. Miller*, 942 F.Supp. 925, 932 (S.D.N.Y.1996) (Mukasey, J. & Peck, M.J.); *Benn v. Stinson*, 917 F.Supp. 202,

205 (S.D.N.Y.1995) (Stein, J. & Peck, M.J.).

▮ Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while winnowing out weaker arguments. *E.g., Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *Mayo v. Henderson,* 13 F.3d at 533; *Torres v. Irvin,* 1998 WL 824527 at *22; *Hurd v. Keane,* 1997 WL 582825 at *2; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206. Further, reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *E.g., Jones v. Barnes,* 463 U.S. at 754, 103 S.Ct. at 3314; *Tsirizotakis v. LeFevre,* 736 F.2d 57, 65 (2d Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Torres v. Irvin,* 1998 WL 824527 at *22; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206. Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d at 533; *see also, e.g., Torres v. Irvin,* 1998 WL 824527 at *22; *Hurd v. Keane,* 1997 WL 582825 at *2; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206.

▮ Under this standard, it cannot be stated that Avincola's appellate counsel was ineffective for failing to raise the jury instruction claim. First, Avincola's appellate attorney could not have raised this claim on appeal because the claim was unpreserved for appellate review. In his second CPL § 440.10 motion, Avincola admits that his trial "attorney declined to request to the Judge to instruct the jury,

that the prosecution's case was based on circumstantial evidence." (Ex. J: 10/24/91 Avincola § 440.10 Br. at 23.) Furthermore, a review of the trial transcript does not reveal such a request and Avincola's trial counsel did not object to the jury instructions at trial. (T. 1101.) "Under New York law, a defendant must object to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal." *Reyes v. Keane,* 118 F.3d at 138 (citing CPL § 470.05(2)); [5] *see also, e.g., Liner v. Keane,* 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan.3, 1996) (Wood, D.J. & Peck, M.J.) ("New York law requires a party to object to the court's jury charge in order to preserve the issue for appellate review."); *People v. Cadorette,* 56 N.Y.2d 1007, 1009, 453 N.Y.S.2d 638, 638, 439 N.E.2d 353 (1982) ("[d]efendant's other contention regarding alleged errors in the trial court's charge to the jury has not been preserved for our review insofar as no exception to the charge was taken at trial."); *People v. Holzer,* 52 N.Y.2d 947, 948, 437 N.Y.S.2d 964, 964, 419 N.E.2d 867 (1981) ("In consequence of the failure of her counsel either to make a request for the desired charge or to except to the court's failure so to charge the issue has not been preserved for our review."); *People v. Flecha,* 161 A.D.2d 116, 116, 554 N.Y.S.2d 845, 845 (1st Dep't 1990) ("Defendant now claims on appeal that he was denied a fair trial by the court's ... [jury] charge. However, since these objections were not raised at trial, they are unpreserved for appellate review."). Thus, it is clear that because Avincola did not lodge a timely objection to the jury instructions at trial, the claim was unpreserved for appellate review. Therefore, because his attorney could not have raised this claim in the First Department,

---

5. N.Y. CPL § 470.05(2) provides, in relevant part:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

his attorney could not possibly have been ineffective for failing to do so.

## B. *Avincola's Circumstantial Evidence Claim is Meritless*

 Moreover, the claim itself is meritless. Under New York law, a circumstantial evidence jury charge is only required, at the defendant's request, when the evidence against a defendant comprises solely of circumstantial evidence. *See, e.g., People v. Daddona,* 81 N.Y.2d 990, 992, 599 N.Y.S.2d 530, 531, 615 N.E.2d 1014 (1993) ("Whenever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty. However, where a charge is supported with both circumstantial and direct evidence, the court need not so charge the jury.") (citations omitted); *People v. Padilla,* 235 A.D.2d 318, 318, 653 N.Y.S.2d 310, 311 (1st Dept.1997) ("Since the evidence was not wholly circumstantial, the court properly denied defendant's request for a circumstantial evidence charge."); *People v. Roldan,* 211 A.D.2d 366, 370, 627 N.Y.S.2d 1014, 1017 (1st Dept.1995) (where direct evidence of conduct is presented, wholly circumstantial evidence of intent does not "trigger the necessity for a circumstantial evidence charge"), *aff'd,* 88 N.Y.2d 826, 643 N.Y.S.2d 960, 666 N.E.2d 553 (1996).

 Avincola's admission to Rivera that he had just killed Garcia constituted direct evidence of the murder; therefore, the case against Avincola was not "wholly circumstantial," and no circumstantial evidence jury charge was necessary. *See, e.g., People v. Guidice,* 83 N.Y.2d 630, 636, 612 N.Y.S.2d 350, 352, 634 N.E.2d 951 (1994) ("[a] defendant's statement is considered direct evidence if it constitutes 'a relevant admission of guilt' "; no circumstantial evidence charge necessary based on defendant's statements relevant to his guilt); *People v. Reed,* 247 A.D.2d 900, 668 N.Y.S.2d 858, 859 (4th Dept.1998) (defen-

dant's admission constituted direct evidence of crime charged, obviating entitlement to circumstantial evidence charge); *People v. Robbins,* 229 A.D.2d 1008, 1008, 645 N.Y.S.2d 671, 672 (4th Dep't 1996) (no circumstantial evidence charge needed since "the accomplice testimony and defendant's unambiguous admissions constitute direct evidence of guilt"); *People v. Stern,* 226 A.D.2d 238, 241, 641 N.Y.S.2d 248, 252 (1st Dep't 1996) ("A 'total' circumstantial evidence charge ... was not required since defendant's admissions on the tape constituted direct evidence of his guilt.").

Therefore, because a circumstantial evidence charge was not required under New York law, Avincola's appellate counsel was not ineffective for failing to raise this claim. *See, e.g., Medina v. Barnes,* 71 F.3d 363, 367 (10th Cir.1995) ("Because these claims were meritless, any allegation that appellate counsel was ineffective for failing to raise them on direct appeal must also fail."); *Lilly v. Gilmore,* 988 F.2d 783, 786 (7th Cir.) ("The Sixth Amendment does not require counsel to ... press meritless arguments before a court."), *cert. denied,* 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993); *Kelly v. Greiner,* No. 97–CV–7535, 1999 WL 84077 at *5 (E.D.N.Y. Feb.11, 1999); *Barnett v. United States,* 870 F.Supp. 1197, 1204 (S.D.N.Y.1994); *Leaks v. United States,* 841 F.Supp. 536, 541 (S.D.N.Y.1994) ("An attorney's decision not to raise meritless claims on appeal can never rise to the level of ineffective assistance of counsel."), *aff'd mem.,* 47 F.3d 1157 (2d Cir.1995).

Accordingly, Avincola has not shown cause, nor has he made any attempt to show prejudice or actual innocence. Therefore, Avincola's habeas petition should be denied as to this ground.

## II. *AVINCOLA'S PETITION SHOULD BE DENIED WITH REGARD TO THE CLAIM FOR WHICH HE FAILED TO FAIRLY PRESENT THE CONSTITUTIONAL NATURE TO THE STATE COURT*

Section 2254 codifies the exhaustion requirement, providing that "[a]n application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless is appears that—(A) the applicant has exhausted the remedies available in the courts of the State;...." 28 U.S.C. § 2254(b)(1)(A); *see, e.g., Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948 ... in 28 U.S.C. § 2254."); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990); *Daye v. Attorney General,* 696 F.2d 186, 190–94 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203.

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.... Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Diaz v. Coombe,* 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting *Klein v. Harris,* 667 F.2d 274, 282 (2d Cir.1981)); *accord, e.g., Boyd v. Hawk,* 94 Civ. 712, 1996 WL 406680 at *3; *Ehinger v. Miller,* 928 F.Supp. 291, 293 (S.D.N.Y.1996).

 "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General of New York,* 696 F.2d at 191; *accord, e.g., Diaz v. Coombe,* 1997 WL 529608 at *3. The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. *E.g., Jones v. Vacco,* 126 F.3d 408, 413–14 (2d Cir.1997); *Daye v. Attorney Gen.,* 696 F.2d at 191; *Grady v. LeFevre,* 846 F.2d 862, 864 (2d Cir.1988); *Petrucelli v. Coombe,* 735 F.2d 684, 688–89 (2d Cir.1984); *Diaz v. Coombe,* 1997 WL 529608 at *3. In *Daye,* the Second Circuit en banc stated:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney General,* 696 F.2d at 194; *accord, e.g., Levine v. Commissioner of Correctional Servs.,* 44 F.3d 121, 124 (2d Cir.1995); *Diaz v. Coombe,* 1997 WL 529608 at *3; *Washington v. Superintendent, Otisville Correctional Facility,* 96 Civ. 2729, 1997 WL 178616 at *3–4 (April 11, 1997) (Scheindlin, D.J.); *Boyd v. Hawk,* 1996 WL 406680 at *3.

 In the present petition, Avincola argues that the trial court improperly admitted evidence of "uncharged criminal conduct," namely the testimony that Mejia had seen him with a shotgun. (Avincola Br. at 34–39; Pet. ¶ 12(B).) Avincola raised a similar argument in his appeal to the First Department. However, a closer inspection of his appellate brief reveals that, under the *Daye* standard, this ground was not fairly presented to the state court as a constitutional claim. His argument on

his state appeal was based solely on state court decisions that did not employ federal constitutional analysis. (*See* Ex. D: Avincola 1st Dep't Br. at 15–20, 29–32.) Therefore, this claim has not been "fairly presented" to the state court as constitutional claims under *Daye* and its progeny. *See Boyd v. Hawk*, 94 Civ. 7121, 1996 WL 406680 at *4 (S.D.N.Y. May 31, 1996) (Batts, D.J. & Peck, M.J.) (claims not fairly presented where, "[o]n its face, it is obvious that [petitioner's] brief neither relies on pertinent federal cases employing constitutional analysis nor relies on state cases employing constitutional analysis in like fact situations"); *Mendez v. Superintendent, Adirondack, Correctional Facility*, 94 Civ. 6500, 1996 WL 66117 at *2 (S.D.N.Y. Feb.14, 1996), *aff'd mem.*, 104 F.3d 356 (2d Cir.1996); *Jones v. Hood*, 826 F.Supp. 82, 85 (W.D.N.Y.1993) (claim not fairly presented where "[p]etitioner relied solely on state law in asserting his claims .... He cited no federal caselaw whatsoever, and the state cases and authorities cited did not involve similar fact situations or employ any relevant constitutional analysis."); *Marti v. Riley*, No. CV. 88–3044, 1989 WL 117075 at * 1 (E.D.N.Y. Sept.25, 1989) (claim not fairly presented where petitioner "relied solely on state cases, and neither they nor petitioner's factual arguments employed, or caused the state court to consider, the applicable constitutional test" for petitioner's claim).

"Generally, if a federal habeas petition contains unexhausted claims, a federal court should dismiss it." *Bossett v. Walker*, 41 F.3d at 828 (citing *Rose v. Lundy*, 455 U.S. at 510, 102 S.Ct. at 1199). However, " '[f]or exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." ' " *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997) (quoting *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n.

9, 103 L.Ed.2d 308 (1989))); *accord, e.g., Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("It would be inconsistent with [§ 2254(b) ], as well as with underlying principles of comity, to mandate recourse to state · collateral review whose results have effectively been predetermined"); *Bossett v. Walker*, 41 F.3d at 828 ("if the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."); *Jordan v. Lefevre*, 22 F.Supp.2d 259, 269 (S.D.N.Y.1998) (Mukasey, D.J. & Peck, M.J.); *Redd v. Quinones*, 98 Civ. 2604, 1998 WL 702334 at * 3 (S.D.N.Y. Oct.7, 1998); *Benitez v. Senkowski*, 97 Civ. 7819, 1998 WL 668079 at *8 n. 7 (S.D.N.Y. Sept.17, 1998) (Cote, D.J. & Peck, M.J.); *Chisolm v. Costello*, 94 Civ. 3201, 1998 WL 167332 at *3 (S.D.N.Y. Apr.8, 1998); *Johnson v. New York*, 974 F.Supp. 185, 188 (E.D.N.Y.1997); *Underwood v. Artuz*, 95 Civ. 7866, 1996 WL 734898 at *2 (S.D.N.Y. Dec.24, 1996) (Scheindlin, D.J.). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d at 120; *accord, e.g., Johnson v. New York*, 974 F.Supp. at 188. Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. *Reyes v. Keane*, 118 F.3d at 139; *see also, e.g., Bossett v. Walker*, 41 F.3d at 828; *Washington v. James*, 996 F.2d 1442, 1446–47 (2d Cir.1993), *cert. denied*, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); *Grey v. Hoke*, 933 F.2d at 120–21; *Jordan v. Lefevre*, 22 F.Supp.2d at 269; *Redd v. Quinones*, 1998 WL 702334 at *3; *Johnson v. New York*, 974 F.Supp. at 188.

█ In this case, it is clear that Avincola is now barred from raising this constitutional claim in State court because it could have been raised on appeal, but was not.[6] As the Second Circuit explained in *Washington v. James*:

---

6. New York CPL § 440.10(2)(c) states, in per-

tinent part:

Consequently, we do not believe [Petitioner] has fairly presented to the state courts his constitutional objection to the agency defense instruction.... [T]he state courts have not had an opportunity to address the federal claim raised on habeas review and this normally would preclude our review of that claim....

As we have already noted, this preclusion is not technically the result of a failure to exhaust state remedies, but is due to a procedural default. [Petitioner] no longer has the right to raise his claim under New York law either on direct appeal, *see* McKinney's 1993 Revised N.Y. Court Rules § 500.10(a), or on collateral review. New York's collateral procedures are unavailable because appellant could have raised the [federal constitutional] claim on direct review but did not. *See* N.Y.Crim. Proc. Law § 440.10(2)(c). Therefore, [Petitioner] has no further recourse in state court. *See* 28 U.S.C. § 2254(c); *Grey v. Hoke*, 933 F.2d [at] 120.... Because he failed to raise his claim in state court and no longer may do so, his claim is procedurally defaulted.

*Washington v. James*, 996 F.2d at 1446–47; *see also, e.g., Reyes v. Keane*, 118 F.3d at 139 ("Section 440.10(2)(c) of New York's Criminal Procedure Law *mandates* that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record.") (emphasis added); *Bossett v. Walker*, 41 F.3d at 829; *Redd v. Quinones*, 1998 WL 702334 at *3; *Camarano v. Irvin*, 902 F.Supp. 358, 365–6, 367 n. 3 (S.D.N.Y.1994) (finding federal constitutional claim not fairly presented to state court where presented only as state law issue, and procedurally barred because it could have been

raised on appeal), *aff'd mem.*, 122 F.3d 1055 (2d Cir.1995). This claim, therefore, is "deemed exhausted." *Reyes v. Keane*, 118 F.3d at 139.

However, "[w]hile petitioner's failure to 'fairly present' his claim in state court leads to a determination that the claim is [deemed] exhausted, at the same time this failure results in a procedural default of the claim." *Redd v. Quinones*, 1998 WL 702334 at *3 (citing *Bossett v. Walker*, 41 F.3d at 829, & *Grey v. Hoke*, 933 F.2d at 121); *Jordan v. Lefevre*, 22 F.Supp.2d at 269. A federal court may not reach the merits of a procedurally defaulted claim unless the petitioner successfully shows cause for the default and prejudice attributable thereto, or that a fundamental miscarriage of justice will result. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 748, 111 S.Ct. 2546, 2563, 115 L.Ed.2d 640 (1991); *see also* cases cited at pages 19–20 above. Since Avincola has not shown cause and prejudice on this claim or that a fundamental miscarriage of justice would result, his petition should be denied as to this ground.

## III. THE PETITION SHOULD BE DENIED WITH REGARD TO AVINCOLA'S REMAINING GROUNDS BECAUSE THEY ARE MERITLESS

### A. Hearsay Evidence

█ Avincola alleges that his conviction was based on inadmissible hearsay, both at the suppression hearing and at trial, in violation of his rights under the Sixth Amendment. (Pet.¶ 12(F); Avincola Br. at 65–68.) Specifically, Avincola takes issue with the suppression hearing testimony of two police officers, who recounted statements made to them by Rivera and

---

2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

....

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal

from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to ... raise such ground or issue upon an appeal actually perfected by him ....

Mejia. (Avincola Br. at 67–68.) In addition, Avincola challenges as hearsay Rivera's trial testimony that Avincola told her that he had killed Garcia and Mejia's trial testimony that a few days before the killing, Avincola had told her he was going to kill San Martin. (Avincola Br. at 65.) Avincola raised this hearsay claim before the state courts in his pro se supplemental appellate brief under the heading, "The Trial Court Committed Reversible Error in Introducing Inconsistent Testimony of Nilda Ortiz Rivera and Mayra Mejia Based on Inadmissible Hearsay Evidence. N.Y. Const. Art. 1 Sec. 6; U.S. Const. V, VI, XIV Amedts." (Ex. E: Avincola 1st Dep't Pro Se Supp. Br. at 26.) Therefore, this claim is exhausted.[7] *See, e.g., Jones v. Vacco,* 126 F.3d 408, 413–14 (2d Cir.1997) ("Citing a specific constitutional provision or relying on federal constitutional precedents alerts state courts of the nature of the claim."); *Fernandez v. Dufrain,* 11 F.Supp.2d 407, 415 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.) ("Under Second Circuit decisional law, . . . reference to the Fourteenth Amendment . . . is sufficient to satisfy the exhaustion requirement," citing cases).

 Addressing the merits, Avincola's petition should be denied as to this claim because the admission of the statements did not violate Avincola's constitutional rights. Preliminarily, under New York law, hearsay evidence is admissible at a suppression hearing. *See* N.Y. CPL § 710.60(4); *People v. Gonzalez,* 68 N.Y.2d 950, 951, 510 N.Y.S.2d 86, 87, 502 N.E.2d 1001 (1986). Furthermore, there is no constitutional rule disallowing hearsay testimony in a suppression hearing, and indeed federal courts allow hearsay evidence in such hearings. *See, e.g., United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980). Consequently, it is clear that the state trial court's admission of hearsay evidence at the suppression hearing does not provide a basis for habeas relief.

 With regard to trial testimony, the Confrontation Clause of the Sixth Amendment affords the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment's Confrontation Clause is applicable in state criminal trials via the Fourteenth Amendment. *E.g., Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The primary purpose of the confrontation clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. *E.g., Douglas v. Alabama,* 380 U.S. at 418–

---

7. The First Department did not specifically address the merits of this claim. In concluding its opinion, the First Department stated that it had "considered defendant's remaining contentions and find them either lacking in merit or unpreserved for appellate review." *People v. Avincola,* 162 A.D.2d 288, 290, 556 N.Y.S.2d 877, 879 (1st Dep't 1990). "Whether this language in a state court's affirmance is too ambiguous to preclude federal court review on the independent ground of procedural default has yet to be determined in this circuit." *Hayes v. Coombe,* 142 F.3d 517, 519 (2d Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 879, 142 L.Ed.2d 779 (1999). However, it is well-established that "[w]hen a state appellate court affirms a conviction with an opinion, [a federal court] cannot assume that the decision rested on a procedural default. Indeed, in order to preclude federal review, the last state court to render judgment must 'clearly and expressly state[ ] that its judgment rest[ed] on a state procedural bar.'" *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997) (citations omitted). Here, the First Department's decision can only be described as "facially ambiguous." *Hayes v. Coombe,* 142 F.3d at 519. Accordingly, since "[i]t is unclear whether the [First Department] rejected [petitioner's] claim because it was unpreserved or because it was deemed meritless as a matter of federal constitutional law," this Court can address the merits of the claim. *Tankleff v. Senkowski,* 135 F.3d 235, 247 (2d Cir.1998); *accord, e.g., McLean v. McGinnis,* 29 F.Supp.2d 83, 92 (E.D.N.Y.1998). Indeed, the State does not argue that this claim is procedurally defaulted. *See also* fn. 4 above with respect to the New York Court of Appeals.

19, 85 S.Ct. at 1076–77; *Mitchell v. Hoke*, 930 F.2d 1, 2 (2d Cir.1991). However, not all out-of-court statements are excluded by the Confrontation Clause. As the Second Circuit explained:

> The constitutional constraints on hearsay testimony thus protect the adversary system of justice and the accompanying preference for "face to face" accusation.... [T]he Supreme Court has also observed that the hearsay rules and the confrontation clause are intended " 'to protect similar values' and 'stem from the same roots.' " Thus, if evidence is admissible pursuant to "a firmly rooted hearsay exception," it generally does not offend the confrontation clause.

*Mitchell v. Hoke*, 930 F.2d at 2 (citations omitted); *see also, e.g., White v. Illinois*, 502 U.S. 346, 352–53, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992).

 The statements to which Avincola objects fall within "firmly rooted hearsay exceptions." Rivera testified at trial that Avincola told her he had " 'killed the one that is your old man.' " (T. 316.) Mejia testified at trial that Avincola told Mejia that he swore "to his mother that he was going to kill San Martin" because San Martin and Rivera "were taking his client[s] away." (T. 596–97.) Avincola's statements as testified to by both Rivera and Mejia constitute an admission by a party, and "[i]t is well-established under traditional rules of evidence that a party's admission ... is not hearsay and is therefore not excluded under the hearsay rule." *Figueroa v. Mann*, 90 Civ.1965, 1992 WL 51542 at *5 (S.D.N.Y. March 10, 1992), *aff'd mem.*, 979 F.2d 845 (2d Cir.1992); *accord, e.g., United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974) ("the respondent's own out-of-court admissions would surmount all objections based on the hearsay rule both at the suppression hearings and at the trial itself, and would be admissible for whatever inferences the [factfinder] could reasonably draw"); *United States v. DeJesus*, 806 F.2d 31, 35 (2d Cir.1986) ("DeJesus' statements were of course admissible as admissions against DeJesus"), *cert. denied*, 479 U.S. 1090, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987); *Garcia v. Senkowski*, No. 92 Civ. 370, 1992 WL 314895 at *2 (E.D.N.Y. Oct.9, 1992) ("[T]he confrontation clause is not implicated where there is no need for the defendant to test the credibility of the individual who made the statements admitted against him.... Therefore, when out of court statements introduced against a defendant were made by him, he cannot claim a violation of the confrontation clause."); *People v. Chico*, 90 N.Y.2d 585, 588, 665 N.Y.S.2d 5, 8, 687 N.E.2d 1288 (1997) (" '[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever made.' ") (quoting *Prince, Richardson on Evidence* § 8–201 at 510 (Farrell, 11th ed.)); Fed. R.Evid. 801(d)(2)(A) ("A statement is not hearsay if—... (2) The statement is offered against a party and is (A) the party's own statement ....").

Accordingly, Avincola's petition should be denied as to this ground.

### B. *Avincola's Confrontation Rights.*

 Avincola claims that he "was deprived of his right to confront two of the prosecutor's witnesses," Collins and Rivera, when the trial court "allowed two (2) of the prosecution's key witnesses to thwart his attempts to question them by invoking their Fifth Amendment right against self-incrimination." (Avincola Br. at 40; *id.* at 39–43; Pet. ¶ 12(C).) The First Department found this claim to be without merit. *People v. Avincola*, 162 A.D.2d 288, 290, 556 N.Y.S.2d 877, 879 (1st Dep't 1990). The claim therefore is exhausted; *see* fn. 4 above.

Because the witnesses' invocation of their privilege against self-incrimination went to collateral matters and Avincola had a full opportunity to question the witnesses about their direct testimony, Avincola's claim is without merit.

As stated before, the Confrontation Clause of the Sixth Amendment affords the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront witnesses has been interpreted as "securing an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens,* 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988); *see also, e.g., Pennsylvania v. Ritchie,* 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987); *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.), *cert. denied,* 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 281 (1991); *Dunbar v. Harris,* 612 F.2d 690, 692 (2d Cir.1979); *United States v. Cardillo,* 316 F.2d 606, 610–11 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60 (1963); *Mercado v. Stinson,* 98 Civ. 0551, 1999 WL 129570 at *8 (S.D.N.Y. Feb.10, 1999) (Baer, D.J. & Peck, M.J.).

The Second Circuit "has recognized that in some instances a defendant's sixth amendment right to confrontation will be denied as a result of a witness' invocation of his or her fifth amendment privilege against self-incrimination." *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.1991). The Sixth Amendment is violated, however, only where assertion of the witness's privilege "undermines the defendant's opportunity to test the truth of the witness' direct testimony." *Bagby v. Kuhlman,* 932 F.2d at 135; *accord, e.g., Carmona v. Att'y General,* 96 Civ. 8045, 1997 WL 876737 at *12 (S.D.N.Y. Oct.7, 1997). In such case, it may be necessary to strike the direct testimony of the witness. *See, e.g., Dunbar v. Harris,* 612 F.2d at 692. However, the witness' recalcitrance on cross-examination does not necessarily require the direct testimony be struck to conform with the Sixth Amendment. *See, e.g., Bagby v. Kuhlman,* 932 F.2d at 135; *Dunbar v. Harris,* 612 F.2d at 692; *United States v. Cardillo,* 316 F.2d at 611; *Mercado v. Stinson,* 1999 WL 129570 at

*8. Rather, the Second Circuit uses a two-step analysis to determine whether the Confrontation Clause is implicated by a witness' refusal to answer questions on cross-examination:

> To reconcile a defendant's rights under the confrontation clause with a witness' assertion of the fifth amendment privilege, a court must initially consider: (1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony. *See Dunbar* [v. *Harris*], 612 F.2d at 692, 693; *see also Klein* [v. *Harris*], 667 F.2d [274] at 289 [(2d Cir.1981)]. If the court determines that the privilege has been invoked with respect to a collateral matter, or that the invocation does not preclude inquiry into the witness' direct testimony, then the defendant's right to cross-examine has not been impinged and no corrective action is necessary. Conversely, the sixth amendment is violated when a witness asserts the privilege with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony. To remedy such a violation, . . . if the witness simply refuses to testify, the witness' direct testimony should be stricken in whole or in part.

*Bagby v. Kuhlman,* 932 F.2d at 135; *see also, e.g., United States v. Zapata,* 871 F.2d 616, 624 (7th Cir.1989) ("a court's resolution of [a conflict between a witness' Fifth Amendment right against self-incrimination and a defendant's Sixth Amendment right to confrontation] should focus on whether the unanswered questions involved matters directly related to the scope of the direct examination or to collateral matters") (citing *Cardillo* ); *United States v. Nunez,* 668 F.2d 1116, 1122 (10th Cir.1981) (quoting *Cardillo* ); *Turner v. Fair,* 617 F.2d 7, 10–11 (1st Cir.1980) (quoting *Cardillo* ); *Dunbar v.*

*Harris,* 612 F.2d at 692; *United States v. Cardillo,* 316 F.2d at 611; *Mercado v. Stinson,* 1999 WL 129570 *8–9; *Carmona v. State of New York,* 96 Civ. 8045, 1997 WL 876737 at *12 (S.D.N.Y. Oct.7, 1997) (citing *Bagby* ); *United States v. Talco Contractors, Inc.,* 153 F.R.D. 501, 506 (W.D.N.Y.1994) (citing *Bagby* and *Cardillo* ).

Collateral matters are those that bear solely on the witness' credibility. *See, e.g., United States v. Calvente,* 722 F.2d 1019, 1024 (2d Cir.1983), *cert. denied,* 471 U.S. 1021, 105 S.Ct. 2030, 85 L.Ed.2d 313 (1985); *United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983); *Dunbar v. Harris,* 612 F.2d at 693–94; *United States v. Cardillo,* 316 F.2d at 611; *Mercado v. Stinson,* 1999 WL 129570 *9; *Carmona v. State of New York,* 1997 WL 876737 at *12. "If the purpose of cross-examination is to explore more than general credibility, the subject of inquiry is not collateral." *Dunbar v. Harris,* 612 F.2d at 693; *see also, e.g., United States v. Cardillo,* 316 F.2d at 611; *Mercado v. Stinson,* 1999 WL 129570 at *9; *United States v. Badalamenti,* 84 C. 236, 1985 WL 3844, at *1 (S.D.N.Y. Nov. 8, 1985) (citing *Cardillo* ).

A witness' testimony about other unrelated crimes is collateral. *See, e.g., United States v. Brooks,* 82 F.3d 50, 54 (2d Cir.), *cert. denied,* 519 U.S. 907, 117 S.Ct. 267, 136 L.Ed.2d 191 (1996); *Dunbar v. Harris,* 612 F.2d at 694 (testimony about involvement in drug dealings other than the one at issue in trial was collateral); *Carmona v. Att'y General,* 1997 WL 876737 at *12 ("the matter about which Gilberto refused to testify," *i.e.,* use of a gun during a burglary, "was relevant only to impeachment, an issue purely collateral to his direct, eyewitness testimony").

Here, it is clear that the questions for which Collins and Rivera asserted their Fifth Amendment rights related solely to credibility issues, and Avincola was not precluded from inquiring into their direct testimony. First, with regard to Rivera, defense counsel on numerous occasions asked Rivera about drug activities and her sources of income. (T. 337, 341, 345, 346, 350–53, 392–93, 396–97, 420–23, 442, 461, 473.) The trial court only allowed Rivera to assert her privilege four times, when the court felt that the question concerned a collateral matter, and instructed the jury that the question was asked solely for purposes of credibility. (T. 345, 346, 392–93, 421.)[8] A review of the four incidents for which the trial court allowed Rivera to assert her privilege reveals that the questions related solely to Rivera's prior criminal activities, unrelated to the shooting incident. (T. 345, selling of cocaine after the shooting incident; T. 346, how she earned money at the time of trial to pay rent each month; T. 392–93, previous arrest for distribution of cocaine; and T. 421, subpoenas she had received in relation to other criminal cases.) These questions concerning other criminal activity were collateral. *United States v. Brooks,* 82 F.3d at 54; *Dunbar v. Harris,* 612 F.2d at 694; *Carmona v. Att'y General,* 1997 WL 876737 at *12. Thus, no Confrontation Clause violation exists with regard to Riv-

---

**8.** A typical example of the trial court's instruction to the jury reads as follows:

> [Rivera's] refusal to answer these questions, this particular question about whether she has been selling drugs since she has left Rikers Island, cannot be interpreted by you as having any relevance to the merits of this case.
>
> However, since it does relate to her credibility, her believability as a witness, you may take into consideration her refusal to answer those questions as though she an-

swered negatively to herself. That is relevant solely to the issue of her believability as a witness and not as to the guilt or innocence of the defendant.

(T. 345.) The other times that Rivera asserted her privilege, the trial court ordered Rivera to answer, giving her immunity from possible prosecution related to those answers, or instructed her that the answer was not privileged. (T. 337, 341, 350–53, 396–97, 421–23, 442, 461, 473.)

era's invocation of her Fifth Amendment privilege.

Second, Collins's assertion of his Fifth Amendment rights also related to collateral issues. Collins asserted his privilege in regards to questions about his potential liability for tax fraud (T. 175–77), sources of income other than his job (T. 177–78, 217–18), and his drug use (T. 187, 223). Since all of these questions concerned criminal matters unrelated to the shooting and only went to Collins credibility as a witness, they were collateral. Defense counsel also asked Collins if he had ever owned a firearm, and Collins asserted his Fifth Amendment privilege. (T. 221.) However, defense counsel then asked Collins if he had ever owned a sawed-off.30 caliber rifle, the type that was used in the shooting, and Collins replied "No." (T. 221.) Additionally, when defense counsel asked Collins if he had ever handled a firearm outside his military experience, Collins asserted his privilege. (T. 222.) However, defense counsel then asked if Collins had handled a firearm during the month of the shooting and Collins replied that he had not. (T. 222.) Therefore, Collins's assertion of his privilege with regard to this line of questioning did not obstruct Avincola from inquiring into Collins's direct testimony. The Court agrees with the First Department's conclusion that "the record does not indicate that defendant's attorney abandoned any line of interrogation or argument as a result of the invocation of the privilege against self-incrimination." *People v. Avincola*, 162 A.D.2d 288, 290, 556 N.Y.S.2d 877, 879 (1st Dep't 1990). Furthermore, Collins answered the remaining questions regarding his direct testimony. (T. 240–50.) As the Second Circuit has explained, "a witness' invocation of the fifth amendment will not violate a defendant's right to confrontation unless 'the refusal precludes the defendant from testing the truth of the witness' prior testimony." *Bagby v. Kuhlman*, 932 F.2d at 137. The unanswered firearm questions, in the context of the questions Collins did answer on the same subject, did

not preclude Avincola from testing the truth of Collins' direct testimony. Thus, no Confrontation Clause violation is present with regard to Collins's assertion of his privilege.

Accordingly, Avincola's petition should be denied as to this ground.

## C. *Avincola's Custodial Statement to the Police*

Avincola claims that the "statement obtained after eleven hours petitioner was in police custody was improperly received as evidence," because he had not knowingly and intelligently waived his *Miranda* rights. (Pet.¶ 12(A); *see also* Avincola Br. at 29–31; Avincola Am. Br. at 18–22.) Avincola raised this ground on appeal in the First Department (*see* Ex. D: Avincola 1st Dep't Br. at 22 ("Casting further doubt that the appellant made a knowing and intelligent waiver of his *Miranda* rights was the fact that while Avincola was being read his rights in the Detective's faulty Spanish, Avincola was under the influence of drugs.")), which that court denied on the merits, *People v. Avincola*, 162 A.D.2d 288, 289, 556 N.Y.S.2d 877, 878 (1st Dep't 1990). He then presented it to the Court of Appeals in his leave application. (*See* Appendix Ex. H: 7/23/90 Letter in Opp. at 1–2). Thus, Avincola exhausted this claim because, under the *Daye* standard, he fairly raised this ground as a federal constitutional claim. *See Boyd v. Hawk*, 94 Civ. 7121, 1996 WL 406680 at *4 n. 8 (S.D.N.Y. May 31, 1996) (Batts, D.J. & Peck, M.J.) ("*Boyd's* first claim, that certain of his statements to the police violated his Miranda rights, adequately raised the federal claim by reference to the Supreme Court's decision in *Miranda v. Arizona*") (citation omitted).

██ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a defendant's statement made during custodial interrogation may only be used against him if the statement was made

voluntarily after a knowing and intelligent waiver of his Fifth Amendment right against self incrimination. *Id.* at 444, 86 S.Ct. at 1612, 1628, ; *see also, e.g., United States v. Ramirez,* 79 F.3d 298, 304 (2d Cir.) ("*Miranda* warnings are intended principally to safeguard the suspect's privilege against self-incrimination."), *cert. denied,* 519 U.S. 850, 117 S.Ct. 140, 136 L.Ed.2d 87 (1996); *Weaver v. Brenner,* 40 F.3d 527, 534 (2d Cir.1994) (*Miranda* warnings "serve to reinforce the underlying Fifth Amendment right to be free from compulsory self-incrimination"); *United States v. Raposo,* 98 Cr. 185, 1998 WL 879723 at *3 (S.D.N.Y. Dec.16, 1998); *United States v. Guzman,* 11 F.Supp.2d 292, 295 (S.D.N.Y.1998) (Scheindlin, D.J.). When conducting a custodial interrogation, law enforcement officials are required to advise a suspect of certain rights that he has, including the right to remain silent and the right to consult with counsel. *See, e.g., Miranda v. Arizona,* 384 U.S. at 444–45, 86 S.Ct. at 1612; *United States v. Ramirez,* 79 F.3d at 304; *United States v. Raposo,* 1998 WL 879723 at *3. The Government has the "heavy burden" to prove by a preponderance of the evidence that the defendant validly waived his rights and that the statements were obtained voluntarily. *Miranda v. Arizona,* 384 U.S. at 475, 86 S.Ct. at 1628; *see also, e.g., United States v. Male Juvenile,* 121 F.3d 34, 39 (2d Cir.1997); *United States v. Ramirez,* 79 F.3d at 304; *United States v. Anderson,* 929 F.2d 96, 98–99 (2d Cir.1991); *United States v. Nieves,* 92 Cr. 658, 1992 WL 350787 at *3 (S.D.N.Y. Nov.13, 1992).

In analyzing whether a defendant validly waived his rights, the Court must engage in a two-part inquiry. *See, e.g., United States v. Male Juvenile,* 121 F.3d at 39; *United States v. Jaswal,* 47 F.3d 539, 542 (2d Cir.1995); *United States v. Murgas,* 967 F.Supp. 695, 705 (N.D.N.Y. 1997). First, the Court must determine whether the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the waiver must have been made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *see also, e.g., United States v. Male Juvenile,* 121 F.3d at 39; *United States v. Jaswal,* 47 F.3d at 542; *United States v. Raposo,* 1998 WL 879723 at *3; *United States v. Murgas,* 967 F.Supp. at 706. Only if the "totality of the circumstances surrounding the interrogation," including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine,* 475 U.S. at 421, 106 S.Ct. at 1141; *accord, e.g., Withrow v. Williams,* 507 U.S. 680, 693, 113 S.Ct. 1745, 1754, 123 L.Ed.2d 407 (1993); *United States v. Male Juvenile,* 121 F.3d at 40; *United States v. Lynch,* 92 F.3d 62, 65 (2d Cir.1996); *United States v. Anderson,* 929 F.2d at 99; *United States v. Murgas,* 967 F.Supp. at 706; *United States v. Yousef,* 925 F.Supp. 1063, 1073–74 (S.D.N.Y.1996); *United States v. Stewart,* 770 F.Supp. 872, 877 (S.D.N.Y.1991).

After a review of the "totality of the circumstances," the Court finds no error in the First Department's conclusion that Avincola was sufficiently informed of his rights and that his subsequent waiver was voluntary, knowing and intelligent. In his petition, Avincola challenges his waiver in two respects. First, he objects to the manner in which the *Miranda* rights were given to him, arguing that they were not "administered properly" due to the interpreter's statement at the suppression hearing and Palma's lack of formal training in Spanish. (Avincola Br. at 30.) Second, Avincola claims that the waiver could not have been knowing and intelligent because he was under the influence of drugs. (Avincola Br. at 31.)

First, this Court agrees with the First Department that despite "the detective's imperfect Spanish, ... the officer's fluency cannot be seriously doubted. Spanish was the officer's native language, he studied it in high school, and he spoke it at home for many years." *People v. Avincola,* 162 A.D.2d at 289, 556 N.Y.S.2d at 878. Furthermore, this Court does not "review the warnings ... for whether they adhered to a certain form, but for their substance.... [The Court] must ascertain if [petitioner] had his *Miranda* rights brought home to him in an intelligible fashion." *United States v. Anderson,* 929 F.2d at 98. Here, although the Spanish version of the rights as translated to the trial court did not mirror the exact language set forth in the *Miranda* decision, they adequately and intelligently informed Avincola of his *Miranda* rights. Based on the translation provided to the trial court, Detective Palma clearly informed Avincola that (a) he had the right to remain silent; (b) anything he said to the police could be used against him; (c) he had the right to consult a lawyer before he answered any questions; (d) he had the right to have an attorney present when answering questions; (e) if he could not afford an attorney, he would be provided with an attorney; and (f) if he did not have a lawyer at his disposal, he had the right to remain silent until he had the opportunity to speak to an attorney. (T. 44–45.) Thus, this statement of rights "touched all of the bases required by *Miranda*" and was sufficient to "reasonably" inform Avincola of his *Miranda* rights. *Duckworth v. Eagan,* 492 U.S. 195, 202–03, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166 (1989) ("We have never insisted that *Miranda* warnings be given in the exact form described in that decision.... The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*'"; upholding recitation of rights that contained the same basic elements as those given here); *California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981) (per curiam) ("*Mi-*

*randa* itself indicated that no talismanic incantation was required to satisfy its strictures"); *Rhode Island v. Innis,* 446 U.S. 291, 297, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980) ("Those safeguards included the now familiar *Miranda* warnings—namely, that the defendant be informed 'that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires'—or their equivalent."); *Theriot v. Senkowski,* 802 F.Supp. 1081, 1083 (S.D.N.Y.1992) ("Warnings given in the language prescribed by *Miranda* are not independently required by the Constitution .... There is nothing here which suggests to me that the core language of *Miranda* was omitted or not understood, that petitioner was misled or not informed of his rights, or that the ultimate objectives of *Miranda* were in any way compromised."); *see also, e.g., United States v. Villegas,* 928 F.2d 512, 518–19 (2d Cir.) (manner in which *Miranda* warnings were given "pass[ed] muster" where co-defendant read Spanish translation of *Miranda* rights to defendant and defendant "nodded affirmatively" after reading Spanish version printed on a card), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991); *United States v. Maldonado–Rivera,* 922 F.2d 934, 972 (2d Cir.1990) (motion to suppress properly denied where defendant was given his rights in Spanish, stated he understood, did not invoke his right to remain silent and did not request an attorney), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991); *United States v. Nolasco,* 938 F.Supp. 181, 185 (S.D.N.Y.1996) (defendant adequately informed of his rights where detective read them to him in Spanish); *United States v. Nieves,* 1992 WL 350787 at *4 (finding defendants were sufficiently informed of their rights where police officers used Spanish translation of *Miranda* warnings).[9]

Furthermore, Avincola's argument that his waiver was not knowing and intelligent due to his drug intoxication is undermined by the record. The Court agrees with the First Department's conclusion that "[a]lthough [Avincola's] agitation and dilated pupils constituted physical manifestations of his drug use, the hearing court's conclusion that defendant was alert was warranted by the evidence. In that regard, [Avincola's] suggestion that the detective switch from English to Spanish is strong indication that he did not lack the capacity to appreciate the nature and consequences of his statements, his drug use notwithstanding." *People v. Avincola,* 162 A.D.2d at 289, 556 N.Y.S.2d at 878; *see, e.g., United States v. Turner,* 157 F.3d 552, 555–56 (8th Cir.1998) (despite defendant's PCP intoxication, evidence showed that he understood his rights and knowingly waived them, and court declines to "adopt a *per se* rule ... when confronted with intoxication"); *United States v. Garcia Abrego,* 141 F.3d 142, 170 (5th Cir.) (statement was voluntary where drugs taken did not impair defendant's mental capacity), *cert. denied,* — U.S. —, 119 S.Ct. 182, 142 L.Ed.2d 148 (1998); *United States v. Brooks,* 125 F.3d 484, 491 (7th Cir.1997) (statement voluntary despite claim that he was experiencing effects of crack cocaine, sleep deprivation and a hand injury, he was alert, coherent and possessed capability of making informed and voluntary choices); *United States v. Christopher,* 94 Cr. 303, 1995 WL 366377 at *8–9 (S.D.N.Y. June 19, 1995) (defendant knowingly and intelligently waived *Miranda* rights despite his claim that he was under the influence of alcohol, where he stated that he understood rights and signed form con-

firming that he understood); *United States v. Grant,* 427 F.Supp. 45, 50 (S.D.N.Y.1976) (statement voluntarily given by intoxicated defendant where "he was under control of his senses and fully understood the consequences of his statements," holding that "[c]onfessions given while under the influence of drugs are not per se involuntary confessions"). Furthermore, there is no indication that Avincola did not understand the rights when they were stated to him in Spanish; to the contrary, Avincola immediately acknowledged that he understood each of his rights after they were stated to him in Spanish. (S.91–93.) The Court sees this as strong evidence that Avincola had no problem understanding his rights as they were given to him in Spanish. Therefore, the trial court did not violate Avincola's constitutional rights by admitting his custodial statements into evidence.

Consequently, the petition should be denied as to this ground.

### D. *Avincola's Claims of Prosecutorial Misconduct*

Avincola's prosecutorial misconduct claim (Pet.¶ 12(A)(1)) comprises nine distinct claims of prosecutorial misconduct: (1) reference to matters not in evidence during summation (Avincola Br. at 49); (2) allusion to uncharged crimes (*id.* at 51); (3) alteration of a witness's statement on appeal (*id.* at 52); (4) failure to disclose a witness's cooperation deal (*id.* at 54); (5) introduction of false testimony of death threats by Avincola (*id.* at 56); (6) failure to disclose to defense counsel Avincola's exculpatory statement to the police (*id.* at 59); (7) introduction into evidence of a rent receipt in violation of the hearsay rule's business records exception (*id.* at 61); (8)

---

9. *See also, e.g., United States v. Burns,* 684 F.2d 1066, 1074–75 (2d Cir.1982) (finding *Miranda* warnings adequate which did not specifically mention right to have attorney present during questioning where the warnings, taken as a whole, advised suspect of his right to remain silent and to have an appointed attorney); *United States v. Lamia,* 429 F.2d 373, 376–77 (2d Cir.), *cert. denied,* 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970) ("The court in *Miranda* nowhere prescribed the exact words which must be used under all circumstances"; taking all of the warnings in totality, the "substance of the required warnings was given").

failure to preserve evidence on appeal (*id.* at 63); and (9) failure to produce an "eye witness" mentioned during the prosecutor's opening statement (*id.* at 43–47). Initially, Avincola has failed to present two of these claims—numbers two and five—to the state courts. Because he would now be procedurally barred from raising them in state court, this Court can deem the claims exhausted and procedurally barred from federal habeas review. *See, e.g., Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991); *see* Point II above.

Avincola presented the remaining prosecutorial misconduct claims on direct appeal or in his second § 440.10 motion. The Appellate Division denied the claims on direct appeal, *People v. Avincola,* 162 A.D.2d 288, 290, 556 N.Y.S.2d 877, 878 (1st Dep't 1990), and the trial court denied the CPL § 440.10 motion. (Ex. L: 12/5/91 Decision & Order at 3–4.) Therefore these claims are exhausted; *see* fn. 4 above.

■■■■ Prosecutorial misconduct violates a defendant's due process rights only when it is of " ' "sufficient significance to result in the denial of the defendant's right to a fair trial." ' " *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987); *accord, e.g., United States v. McCarthy,* 54 F.3d 51, 55 (2d Cir.), *cert. denied,* 516 U.S. 880, 116 S.Ct. 214, 133 L.Ed.2d 145 (1995); *Blissett v. Lefevre,* 924 F.2d 434, 440 (2d Cir.), *cert. denied,* 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991); *Readdon v. Senkowski,* 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct.13, 1998); *Hurd v. Keane,* 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept.19, 1997) (Scheindlin, D.J.); *Beverly v. Walker,* 899 F.Supp. 900, 911 (N.D.N.Y.1995), *aff'd,* 118 F.3d 900 (2d Cir. 1997). To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." *Blissett v. Lefevre,* 924 F.2d at 440; *accord, e.g., Greer v. Miller,* 483 U.S. at 766, 107 S.Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context' "); *United States v. McCarthy,* 54 F.3d at 55; *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990); *United States v. Biasucci,* 786 F.2d 504, 514 (2d Cir.), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); *Hurd v. Keane,* 1997 WL 582825 at *4; *Beverly v. Walker,* 899 F.Supp. at 911.

■■■ Avincola's first claim of prosecutorial misconduct: With regard to Avincola's claim that the prosecutor made inappropriate remarks during summation, Avincola does not cite to a single statement in the prosecutor's summation that was prejudicial. He only refers in general language to the "prosecutor's improper arguments." (Avincola Br. at 47.) This vague claim is insufficient to state a prosecutorial misconduct claim. *See, e.g., Maddox v. Lord,* 818 F.2d 1058, 1061 (2d Cir.1987) (court can deny habeas petition when claims are "merely 'vague, conclusory, or palpably incredible' "); *United States v. Romano,* 516 F.2d 768, 771 (2d Cir.) (habeas relief properly denied where prosecutorial misconduct claim consisted of only "conclusory allegations"), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *Hernandez v. United States,* 91 Civ. 7623, 1995 WL 368436 at *3 (S.D.N.Y. June 21, 1995) ("conclusory allegations do not constitute a claim of prosecutorial misconduct"); *Gregg v. Scully,* 657 F.Supp. 257, 259 (S.D.N.Y. 1987) (denying prosecutorial misconduct claim that was "unsubstantiated" and stated "in a conclusory fashion").

■■■ Avincola's third and eighth misconduct claims: Avincola's claims that the prosecution altered a statement on appeal and failed to preserve evidence are not appropriate because the focus of a prosecutorial misconduct claim is whether the

prosecutor's actions deprived the defendant of a "fair trial." Avincola has not shown how these two alleged improprieties deprived him of a "fair trial" or how these actions affected any of his constitutional rights or any claims he raised on appeal. *See generally Greer v. Miller*, 483 U.S. at 765, 107 S.Ct. at 3109; *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir.1990) (to demonstrate violation of rights on appeal, petitioner must show that appeal did not "accord with due process").

■ Avincola's fourth prosecutorial misconduct claim: Avincola's claim that the prosecution failed to disclose a cooperation deal with Rivera is frivolous as Avincola has failed to come forward with any evidence to show that the State had entered into such a deal with her. Avincola's speculation that such an agreement exists (*see* Avincola Br. at 54–56) is simply insufficient to raise a constitutional concern. *See, e.g., Maddox v. Lord*, 818 F.2d at 1061; *United States v. Romano*, 516 F.2d at 770; *Clancy v. Commissioner of Correctional Servs.*, 956 F.Supp. 490, 501 (S.D.N.Y.1997) (denying prosecutorial misconduct which was based on "nothing more than a post-trial speculation"), *vacated on other grounds*, 141 F.3d 1151 (2d Cir.1998) (unpublished order); *United States v. Persico*, 84 Cr. 809, 1986 WL 1188 at *1 (S.D.N.Y. Jan.21, 1986) (prosecutorial misconduct claim will not lie based on "mere speculation").

■ Avincola's sixth misconduct claim: Avincola's argument that the prosecutor failed to disclose exculpatory material, namely an alleged report which included Avincola's initial statement to the police that he did not shoot San Martin (Avincola Br. at 59–60) is also meritless because it is clear from the trial transcript that any statement recorded by the police was provided to the defense. (T. 726–29.) In any event, even if the prosecution failed to disclose this alleged report which contained this exculpatory statement, any prejudice was clearly ameliorated by the fact that Detective Palma testified at trial

that Avincola told him during the custodial interrogation that he did not shoot San Martin. (T. 702.)

Avincola's seventh prosecutorial misconduct claim: Avincola's argument that the prosecution improperly admitted a rent receipt in violation of the business exception to the hearsay rule is also frivolous, as the rent receipt was admitted as a past recollection recorded. (*See* T. 780.)

■ Avincola's ninth misconduct claim: With regard to Avincola's argument that he was prejudiced because the prosecutor failed to produce Luis Alvarado as a witness after mentioning him during his opening statement, the Court finds that this conduct falls far short of a constitutional violation. In assessing the severity of a prosecutor's action, the Court may consider the "extent to which the misconduct was intentional." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *accord, e.g., United States v. Rivera*, 971 F.2d 876, 885 (2d Cir.1992); *United States v. Coffey*, 823 F.2d 25, 28 (2d Cir.1987); *United States v. Valentine*, 820 F.2d 565, 570 (2d Cir.1987); *Barnett v. United States*, 870 F.Supp. 1197, 1206 (S.D.N.Y.1994). The prosecutor here had a good faith belief that Alvarado would appear to testify—Alvarado had appeared in his office only a few days before trial and was cooperative. (T. 857.) In fact, Avincola admits that the prosecutor did not act in bad faith in this case. (Avincola Br. at 45.) Furthermore, Avincola's attempt in his summation to use Alvarado's disappearance to his advantage minimizes the severity of the prosecutor's conduct. Additionally, the trial court instructed the jury prior to the opening statement that "[w]hat [the prosecutor] says in his opening remarks is not in itself evidence upon which you will deliberate." (T. 10.) Moreover, the prosecutor presented compelling evidence against Avincola. Therefore, on balance, this alleged misconduct did not substantially prejudice Avincola. *See, e.g.,*

*United States v. Millar,* 79 F.3d 338, 342 (2d Cir.1996) (rejecting prosecutorial misconduct claim based on improper reference to exhibit not in evidence where it was "unintentional," the evidence was not essential to prosecution's case and trial court instructed jury to disregard prosecutor's comment); *United States v. Rivera,* 971 F.2d at 885; *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991) (although prosecutor made improper statements during summation, no prejudice to defendant where trial court instructed jury that the summations were not evidence and case against defendant was strong); *United States v. Coffey,* 823 F.2d at 28 (no constitutional violation where alleged misconduct was isolated and not intentional, the trial court provided curative instructions and trial evidence demonstrated defendant's guilt); *Barnett v. United States,* 870 F.Supp. at 1206 (no constitutional violation where prosecutor's action was not intentional, court gave a curative instruction and petitioner's conviction was certain).

Based on the strong evidence of Avincola's guilt and the lack of severity of any of the prosecutor's actions, singly or collectively, Avincola was not deprived of a fair trial. *See, e.g., Bentley v. Scully,* 41 F.3d 818, 825 (2d Cir.1994) (denying prosecutorial misconduct claim where prosecution presented "compelling evidence" against petitioner and alleged misconduct was both brief and isolated), *cert. denied,* 516 U.S. 1152, 116 S.Ct. 1029, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996); *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991) (although prosecutor made improper statements during summation, no prejudice to defendant where trial court instructed jury that summations were not evidence and case against defendant was strong); *Strouse v. Leonardo,* 928 F.2d 548, 557 (2d Cir.1991) (no violation where "cumulative effect of the prosecutor's alleged misconduct was not so severe as to amount to the denial of a fair trial" and, absent the misconduct, overwhelming evidence existed against petitioner); *Bradley v. Meachum,* 918 F.2d 338, 343 (2d Cir.1990) ("clear evidence of

guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks"), *cert. denied,* 501 U.S. 1221, 111 S.Ct. 2835, 115 L.Ed.2d 1004 (1991); *United States v. Parker,* 903 F.2d 91, 98–99 (2d Cir.) (even where prosecutor acted improperly, no claim for misconduct where "transgression was isolated, the trial court took swift and clear steps to correct [improper conduct], and the evidence against the defendant was strong"), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam) ("Often, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the [misconduct] tends to be deemed insubstantial . . . "), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *Romer v. Keane,* 94 Civ. 4980, 1995 WL 758727 at *6 (S.D.N.Y. Dec.22, 1995) (any alleged prosecutorial misconduct was cured by "overwhelming evidence of petitioner's guilt"); *Magnotta v. Berry,* 906 F.Supp. 907, 926 (S.D.N.Y.1995) (no constitutional violation based on alleged prosecutor misconduct where "petitioner almost certainly would have been convicted absent the improper conduct"); *Barnett v. United States,* 870 F.Supp. 1197, 1206 (S.D.N.Y. 1994) (no constitutional violation where "alleged misconduct was not severe," the court "immediately issued a corrective instruction" and "prosecutor's case was extremely strong").

Accordingly, the petition should be denied as to this ground.

### E. *Ineffective Assistance of Trial Counsel*

Avincola argues that his trial attorney was ineffective because he (a) was "engaged in a clear conflict of interest," (b) did not object to the introduction of hearsay testimony at the suppression hearing and at trial, and (c) did not move for a mistrial when two jurors spoke with San

Martin's father. (Avincola Br. at 73–78; Pet. ¶ 12(G).) These claims are exhausted because they were raised by Avincola and rejected by the state courts on direct appeal and in his first § 440.10 motion. *People v. Avincola*, 162 A.D.2d 288, 290, 556 N.Y.S.2d 877, 878 (1st Dep't 1990). (Ex. C: 5/1/89 Order at 2; *see* fn. 4 above.)

It is clear that under the exacting *Strickland v. Washington* standard discussed above (*see* pages 147–48 & cases cited therein), Avincola's trial counsel was not ineffective. First, with regard to the conflict of interest claim, the state court found that his trial attorney was not associated with Legal Aid, but was in private practice. (*See* Ex. C: 5/1/89 Order at 2.) Avincola has not presented clear and convincing evidence to rebut the trial court's factual conclusion, which this Court must otherwise presume to be correct. 28 U.S.C. § 2254(e); *see, e.g., Rivas v. Keane*, 97 Civ. 2560, 1998 WL 804741 at * 3 (S.D.N.Y. Nov.18, 1998); *Rodriguez v. Bennett*, 98 Civ. 580, 1998 WL 765180 at *3 (S.D.N.Y. Nov.2, 1998). Therefore, this claim is unavailing.

Second, because the hearsay evidence was properly admitted at the suppression hearing and at trial (*see* discussion at pages 33–36 above), it is evident that his attorney was not ineffective for failing to object to the admission of this testimony.

 Finally, Avincola's trial attorney was not ineffective for failing to move for a mistrial based on the jurors brief encounter with the victim's father. The trial court conducted an immediate and adequate inquiry into whether the short conversation had any effect on their ability to be fair and impartial and both jurors informed the court that it had not affected them. (T. 434–35.) Additionally, the jurors did not discuss the incident with other jurors and the court admonished the two jurors not to discuss it any further. (T. 434–36.) Therefore, there was no ground for Avincola's trial counsel to move for a mistrial because the alleged misconduct did not frustrate Avincola's " 'fundamental right to a fair and impartial assessment of the facts' " by the jurors. *People v. Horney*, 112 A.D.2d 841, 842, 493 N.Y.S.2d 130, 131 (1st Dep't 1985); *see, e.g., People v. Lopez*, 222 A.D.2d 610, 610, 635 N.Y.S.2d 292, 293 (2d Dep't 1995) (trial court did not abuse its discretion in denying defendant's motion for mistrial on ground that jury had been prejudiced, where two jurors had an encounter with defendant's mother during course of trial, jurors immediately notified court officer of encounter and court with counsel for all parties present examined individually each juror involved in or aware of encounter and determined that the jurors involved in the incident "had not been prejudiced, and could be fair and impartial"); *People v. Santiago*, 166 A.D.2d 362, 363, 561 N.Y.S.2d 28, 29 (1st Dep't 1990); *see also, e.g., United States v. Diez*, 736 F.2d 840, 845–46 (2d Cir.1984) (trial court did not abuse its discretion in failing to hold a prompt hearing based on allegation that juror had conversation at a bar with DEA agent not assigned to case where contact was minimal, juror "had only a foggy memory that the contact had occurred," prompt hearing could have upset deliberations, and juror promptly informed court of contact); *United States v. Bufalino*, 576 F.2d 446, 451 (2d Cir.) (" '[w]here an unauthorized private communication, contact, or tampering with a juror during a trial does not relate to a matter pending before the jury, there is no right to a new trial absent a showing of prejudice by the defendant' "), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978); *United States v. Brasco*, 516 F.2d 816, 819 (2d Cir.) (same), *cert. denied*, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975); *United States v. Shakur*, 723 F.Supp. 925, 939 (S.D.N.Y. 1988) ("communications involving trial jurors may be characterized as 'innocuous' when they do not directly involve the contested issues"), *aff'd*, 888 F.2d 234 (2d Cir.1989).

Accordingly, Avincola's petition should be denied as to this ground.

### F. *Ineffective Assistance of Appellate Counsel*

Avincola argues that his appellate counsel was ineffective because he failed to argue on appeal that (a) the trial court should have included a circumstantial evidence charge in the jury instructions, and (b) the prosecutor altered a witness' statement on appeal. (Pet.¶ 12(G); Avincola Br. at 78–84.) Avincola raised these claims in his application for a writ of error coram nobis, which was denied by the First Department. (Ex. N: 12/15/92 Order.) *People v. Avincola,* 188 A.D.2d 1092, 592 N.Y.S.2d 578 (1st Dep't 1992). Accordingly, because this decision was not appealable to the Court of Appeals, the claim is exhausted. *See, e.g., Ramirez v. Headley,* 98 Civ. 2603, 1998 WL 788782 at *4 (S.D.N.Y. Nov.10, 1998) ("the filing and consideration of a petition for writ of error coram nobis, which alleges ineffective assistance of appellate counsel, by the Appellate Division satisfies the exhaustion requirement"); *Garcia v. Keane,* 973 F.Supp. 364, 370 (S.D.N.Y.1997); *Meatley v. Artuz,* 886 F.Supp. 1009, 1013 (E.D.N.Y. 1995).

█ Here, it is clear that, under the *Strickland v. Washington* standard discussed above (*see* pages 147–48 above & cases cited therein), Avincola's appellate counsel was not ineffective. First, as discussed above (pages 148–49), it clearly was not ineffective for Avincola's appellate counsel to leave out the jury instruction claim as it was unpreserved for appellate review and frivolous. Second, with regard to the prosecution's alleged alteration of a witness' statement, it was not unreasonable for Avincola's appellate attorney to choose not to advance this claim because, even if the alteration did occur on appeal, it does not present a ground for the reversal of his conviction as there is no indication that the alteration affect-

ed the outcome of Avincola's trial or appeal. Furthermore, Avincola has not shown how his attorney's failure to raise this issue prejudiced him in any way.

Therefore, the petition should be denied as to this ground.

### CONCLUSION

For the reasons set forth above, I recommend that the Court deny petitioner Avincola's habeas corpus petition.[10]

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

█ Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Shira A. Scheindlin, 500 Pearl Street, Room 1050, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir. 1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–

---

**10.** Avincola has requested appointment of counsel. Because it is clear that Avincola is not entitled to relief on any of the grounds in his petition, the Court declines to appoint counsel for Avincola under the governing legal standard set forth in *Cooper v. Sargenti,* 877 F.2d 170 (2d Cir.1989), and *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986).

38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

March 19, 1999.